May it please the Court, I'm Barbie Lyon for the Plumbers Union. This is the appeal that has to do with the three pieces of real property that we say never went into the receivership estate. Our argument is basically fairly simple. The plumbers had full title to these. The only thing that the capital consultants had was they were managers of this property. They had no power to sell it. The black letter principle of the How did you acquire title, just review for me, in the shopping center, Crimson Corner? That was taking back a deed in lieu of foreclosure. There was a deed in lieu of foreclosure. Trace me back earlier for the Murdoch Trust. There was the Murdoch Trust. There was a loan. The Murdoch Trust wanted out of it. The Murdoch Trust was an investor with CCL. That's correct. And they had lent money to the shopping center. And I make a point, this is before the receiver says any fraud started happening. They wanted out of it. The capital consultants were substituted into that loan. Your client was substituted. That's correct. Later that loan went into default and the title deed in lieu of foreclosure was given and that was given to our client. And if there had never been a default, your loan would simply be tossed into the ordinary pool along with all the rest of the private securities? It's hard to say. It could have been, you know, for all things, that loan could have been paid back to us before the 1996, before the beginning of the period when the receiver says the fraud began. We had clear title to that property years before the period, the time when the trustee said any fraud began. Okay. That's your weakest one there. Now, trace me how you acquired title in the other two. The other two were built with Plumber's money back in the early 80s. The capital consultants was acting as the advisor, financial advisor, saying this is a good idea. And the Plumber's put the money into it. Plumber's counsel, Mark Winkle, was instrumental. The deeds, the legal instruments that were involved that conveyed title to the Plumber's, those were drawn out by Plumber's counsel, and that was, like I say, 14 or 15 years before the alleged fraud began. And nobody but Plumber's ever has owned those buildings? Never. Now, it's the receiver's job to show that he has title to whatever the property is. The receiver only stands in the shoes of capital consultants. That's black letter law. It's the rule of bankruptcy law that the bankruptcy estate is the estate, whatever legal title or equitable title the debtor has. The receiver doesn't have any better title. So the question to be asked is what title, equitable or legal, did capital consultants have to any of these three properties? Well, the answer is they certainly had no legal title. They're not on title in any way at all. But did they have equitable title? Did capital consultants have an equitable right to take that property away from us? They don't. And they don't even make a claim like that. The one point that the receiver avoids is ever explaining what capital consultant's title to those three properties was, what capital consultant's legal or equitable title. They never answer that question. They skip right over to the notion that it would be a good idea. Their basic problem is they never explain how this property got into the receivership estate in the first place. They were capital consultants was acting more or less as an apartment manager or property manager. Their position is almost as if an apartment manager went into bankruptcy, could say, you know, I'm managing this apartment, the receiver of the apartment manager, and therefore this apartment belongs to my receivership estate, too, because my guy was managing the apartments and the owners of the apartment. They just have to share in the general pot. How many buildings comparable to the TEC-1? Excuse me, I should be speaking into the microphone. How many buildings comparable to the TEC-1 and TEC-2 building are there in the private investment fund? I'm not talking about your client. I'm talking about general. There are none. These are the only three properties in the entire supposed estate in which there was one legal title. Legal title was strictly in the hands of this one pension fund. There are no others like it. Okay. That, I'd like to reserve the remainder of my time. Okay. Thank you. Thank you. Judge King found that the key issue was not title, but was control. This receiver was appointed as a receiver not only for capital consultants, but all entities that it owned or controlled. The TEC-1 TEC and TEC-2 properties, which Judge King acknowledged were a closer call, as this court has acknowledged as well, were owned at the time of the receivership in limited liability companies. And limited liability companies were owned entirely by plumbers, correct? They were the sole voting member and capital consultants was designated in the LLC agreements. I'm asking ownership. Yes. So the sole owner of the holding company, if that's the right word, was plumbers. That's correct. And capital consultants was expressly designated as the manager in the LLC. Prior to everything going bad, could LLC, excuse me, could capital consultants have sold TEC-1 and TEC-2 without the permission of plumbers? It would have needed the consent. It would have needed to get 15 days notice in the limited liability company operating statements, which are in the excerpts of record attached to the Newkirk Declaration, which starts at excerpts of record 638, and specifically section 4.4, it states that the manager, in this case CCL, would not have the authority to bind the company as to the following matters without first obtaining approval by vote of the majority of the members, which, since there's only one member, would be the plumbers. And that includes a sale or transfer of substantially all of the company's assets. In other words, they could not have sold the buildings without the permission of the plumbers. Right. But it goes on to say that any matter submitted to a vote of the members that is not voted on within 15 days after submittal shall be deemed approved by the members, so their silence would constitute approval. That's the question. But nonetheless, they need the permission under various ways to give it. One is to say yes, and the other is to keep quiet for two weeks. Right. But the converse, which the plumbers assume is true, that is that although capital consultants, which controlled and managed the property, couldn't sell it without their approval, under section 2.7, which says limitations on powers of the members, it says members who are not also managers, so now we're referring to the plumbers, shall not have the authority or power to act as agent for or on behalf of the company to do any act which would bind the company with respect to any third party or to incur any expenditures with respect to the company or its property. So the converse that the plumbers could have sold it at any time without CCL's consent is not true either. The plumbers just couldn't have gone out and sold the property except in violation of the operating agreement, similar to CCL couldn't sell it other than in violation of the operating agreement. This is not a property that once the properties were built and paid for by plumbers, this is not a property, these two properties are not properties where CCL can just shift the funds in and out. That is to say they're owned by plumbers, they can't be sold without permission of plumbers. That's correct. Okay. That's correct. What's the ownership arrangement in terms of sale arrangement with respect to Crimson Corners? Or is it Corner? Could that have been sold without permission of plumbers? I believe it could. I believe it could. Okay. I'm sorry, I don't have the agreement. The other point I would make is that there are other properties that were held in limited liability company vehicles and the distinguishing factor there would be that two or more investors were in the property. So the plumbers, and it just so happens that those are the properties that the plumbers don't want. And the plumbers would like to draw the distinction and say if we've got a limited liability company where we're the only member, then you don't have the right to include that in the estate even though you control the property. And even though it was an investment made through CCL and chosen by CCL. But if there's two members in the LLC, well, then it's okay. Then it can be part of the estate. And I don't believe that's a meaningful distinction. If both clients were put in by CCL, investment money in there, and they are the owners of the LLC as the plumbers are the owner of the One Tech and Two Tech LLC, why, again, why shouldn't those assets be treated similarly? And the plumbers are content to let the bad properties, which they have interests in, be part of the estate. So those losses can be spread amongst all the clients. But the good properties in which they happen to be the sole member of the LLC, they would like to exclude from the estate. I understand the point. But do we have precise numbers to know how bad the dollars are for those other properties? That is to say, if they were to take those properties out and say, I want that property, would they lose more money than they do simply by participating pro rata in the pool? Do we know? Because you're accusing them of cherry picking, obviously. Right. But if they're not going to get more money out of the pool than out of these buildings, they're not. Do you know those numbers? No, I don't. But they demonstrated it by their own conduct. They were given the option. But you see, unless you can tell me that they would have lost more money by taking those buildings  you can't tell me that they are sort of picking and choosing and cherry picking and not being true to their principles. They might be true to the principles, saying, you know what, it's not worth litigating whether these other questions where the dollar amount I'd get is only a little bit more and where we've got two owners. I mean, that's an expensive proposition to litigate. I mean, I'm not quite sure what's going on here, and I'm not sure your suggestion is yet fully borne out. Aren't the numbers in the supplemental excerpts of record? I think they are. I'm sorry. I was listening to you, Your Honor, and I was looking for it in the brief. Value of asset in excess of plumber's investment. So S-C-R-E-H is $8,800,000 in the whole. Correct. Do we know how much money was the total investment? I need to know that number, too. Right. And I don't know how the math was done to get to that number. But those are. It's a percentage number. It's not a. Right. Right. Okay. I got it. So your question with regard to Crimson Corner I think is the appropriate one. They got into that investment through a loan. The loan was in default. It became REO property, essentially. They got put on the deed, but it remained under the control of CCL. If it had been paid off, they would have gotten credit for that money, but it wasn't. Well, then who knows where the money would have gone from there. Correct. But if it had gone back into another investment, it would be part of their claim as it is now. Thank you. Thank you. Thank you. As I recall, the first thing that opposing counsel said in his argument was that Judge King found that control was what mattered, not title. And once again, there is no authority for that. The principle of what goes into a receivership estate or bankruptcy estate is whether the debtor had either legal title or an equitable title. And that is the question here at the end of it. They have totally dodged. They only say we had control of this property. Now, what kind of control did they have? Judge King admitted found that they did not have the power to sell it. All they were doing was managing it. That's in his findings. We put in the evidence to that effect. So what we have is their control. As far as the notion that we could not have sold capital consult, sold these, well, first of all, we could have sold Crimson Corners right out. We had a clear legal title. There wasn't anything that they could have done about that. Their limited power of attorney that the plumber said. You say you could have sold Crimson Corner? Absolutely. Did you need their permission? Absolutely not. Did you need their permission to sell Tech 1 and 2, as he said you did? No. What he says is that's in the limited liability provision.  And they had no claim to continue as manager. I see. Okay. And we could get rid of them that way. They're really just like a property manager. And that's all. When they talk about control, they were getting the tenants and so forth, but that didn't get moved on. Would that have done something to your status if you had taken over direct control of that investment? Are you talking about before or after the bankruptcy? I mean, before or after the recent. What I'm wondering is if there's some rule recovering your fiduciary responsibility to your own people and your tax status, depending on how much control you have or don't have, your vulnerability to various other sorts of lawsuits. I mean, is there some reason why you would not have taken direct control over those properties and pulled them back from the owner? Oh, absolutely not. Absolutely not. And in fact, if you look at it, we didn't really have to do anything to that because all that happened. When they say they relinquished control, they sent us a letter with respect to Crimson Corner saying we have relinquished control. It doesn't even go on the property record, on the title record. It was a non-event. As far as the Liberty Liability Company is, they simply resigned as manager. But under those, we had the right to fire them anyway. We're the owner of the property. We're the trust store. The fiduciary who is simply acting in that role doesn't have the power to take that property away from us. Mr. Barbee, could you help me on the SCREH property? My understanding from the record is that the title was actually held in that LLC. How? I think CCL was on the title, and there were several members in that CC. As an agent for the plumbers and Oregon laborers? Yes, probably as agent. I am not really up to speed on those. I know that we made a distinction between those that we were entitled on and those that CCL had a title interest. The question I'm trying to get at is so if CCL resigned as the member, then who would hold title to SCREH as an example? Well, the Limited Liability Company would still hold title to it. The Limited Liability Company is made up of members, and my understanding is that the only member was CCL. No, the only ones in which we were sole member were the ones who were seeking property. Those SCREH, there were other investors in those two. Including the plumbers? Yes. The only ones that had the only properties, and they were 100% old by one trust fund, were these three that we're talking about. Those SCREH, we had a partial interest in those with others, and CCL was on the title. Well, I guess what I'm trying to understand here is it does seem to me, and I'm just looking at the numbers, that the plumbers are happy to disclaim any interest in losing property, but by what may be just pure coincidence, the only properties that they're claiming that are not includable in the estate are the properties where they made a profit, or where it made sense to hang on to. I have three answers to that. Number one, it is the receiver that is asserting that they have control over that property. We have those other properties. We're not contesting that. That is not an issue. We did not litigate it. These were the three that we had clearest title. You don't have an issue about whether or not who had the right to those others, because we acceded to that. Number two, what the we would have been willing, you know, to take all of these, you know, our proportional shares in all of these properties, but what the receiver proposed was to do that, you had to show you had control over all of these other properties. We couldn't show that we had control over these properties, that we had partial interest. Under the terms that we were presented, we couldn't meet the terms that the receiver. We acceded to that, and that left us with these three, which we contend never went into the bankruptcy estate. And that's the point. Those others, CC Capital Consultants, had a title interest in those. There was at least a culpable claim why the debtor had a title, either a legal or an equitable claim to those. And that's what distinguishes these three properties from those others. Thank you. Thank you very much. The final of these appeals, now 03-35407, United Association Union Local 290 Plumberstein Federer and Ship Federer Industry Pension Fund Trust is now submitted. That concludes our oral argument calendar, both for the day and for the week. Thank you for a very informative set of arguments with a tricky case. Thank you. I join that statement, and I regret that we confused you so much in advance about how this argument was to be conducted. We just nervous the metal out two and a half minutes. We hope we let you talk long enough. Thank you.
judges: Reavley , W. Fletcher, Tallman